IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL D. HOUSTON,** : | | |
| Petitioner : | | |
| : | No. 1:24-cv-01474 | |
| v. : | | |
| : | (Judge Kane) | |
| **WARDEN OF FCI ALLENWOOD** : | | |
| **MEDIUM,** : | | |
| Respondent : | | |

**MEMORANDUM**

Presently before the Court is pro se Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241. For the reasons stated below, the Court will dismiss the petition without prejudice due to Petitioner's failure to first exhaust his administrative remedies before filing the petition.

**I.     BACKGROUND**

Pro se Petitioner Michael D. Houston ("Houston"), who is currently incarcerated at Federal Correctional Institution Allenwood Medium, pleaded guilty to conspiracy to possess with intent to distribute five hundred (500) grams or more of methamphetamine mixture (21 U.S.C. § 846) in the United States District Court for the District of Nebraska on March 21, 2019. See United States v. Houston, No. 4:19-cr-03016 (D. Neb. Apr. 21, 2019), ECF No. 25. On June 21, 2019, Houston was sentenced to serve one-hundred-eighty-eight (188) months' incarceration, to be followed by five (5) years' supervised release. See id., ECF No. 34. On June 14, 2022, the Court reduced Houston's prison term to one-hundred-eighteen (118) months' incarceration pursuant to a Federal Rule of Criminal Procedure 35(a) motion filed by the Government. See id., ECF No. 53; see also id., ECF No. 64 at 1 (referencing reduction in sentence). According to the Federal Bureau of Prisons' Inmate Locator (https://www.bop.gov/inmateloc/), Houston has a projected release date of January 4, 2027.

Houston commenced the instant action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which the Clerk of Court docketed on August 30, 2024. (Doc. No. 1.) Because Houston neither remitted the filing fee nor filed an application for leave to proceed in forma pauperis, an Administrative Order was entered requiring him to either remit the filing fee or seek leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 3.) Houston timely complied with the Administrative Order by filing an application for leave to proceed in forma pauperis ("IFP Application"), which the Clerk of Court docketed on September 10, 2024. (Doc. No. 6.) Unfortunately, Houston did not include his certified prison trust fund account statement with the IFP Application, as required by 28 U.S.C. § 1915(a)(2). As such, another Administrative Order was entered on October 3, 2024, giving the Warden of Federal Correctional Institution Allenwood Medium ("FCI Allenwood Medium"), the correctional facility in which Houston is incarcerated, fifteen (15) days to submit Houston's certified prison trust fund account statement to the Clerk of Court. (Doc. No. 7.) The Clerk of Court docketed Houston's certified account statement on October 16, 2024. (Doc. No. 10.) Approximately two (2) weeks later, Houston remitted the $5 filing fee. (Unnumbered Docket Entry Between Doc. Nos. 11 and 12.)

Because Houston remitted the filing fee, the Court issued an Order denying his IFP Application as moot on November 26, 2024. See (Doc. No. 13 at 1 & n.1). In this Order, the Court also explained to Houston that his habeas petition was incomplete insofar as he did not provide information about, inter alia, the name of the District Court in which he was sentenced, the length of his sentence, his anticipated release date, and the steps he took to exhaust his habeas claim prior to filing this action. See (id. at 2). As such, the Court directed that the Clerk of Court mail Houston a copy of the Court's standard form for the filing of a habeas petition under Section 2241 and that Houston complete, sign, and return the petition within thirty (30) days if he intended to proceed with this action. See (id. at 2–3). Houston timely complied with

2

this Order by filing an amended Section 2241 petition, which the Clerk of Court docketed on December 13, 2024. (Doc. No. 14.)

In his amended habeas petition, Houston contends that the BOP has failed to grant him First Step Act ("FSA") time credits that would reduce his sentence by one year. (Id. at 2, 4, 6, 7.) It appears that Houston contends that violent offenders also qualify for FSA credit if they are in programming.[1] (Id. at 6.)

## II.    LEGAL STANDARDS

### A.    Section 2241 Generally

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)).

---

[1] It is unclear if Houston is acknowledging that he qualifies as a violent offender.

B.     The FSA

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. Id. Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." See Kurti v. White, No. 1:19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FTCs to be applied toward time in pre-release custody or supervised release. See 18 U.S.C. § 3632(d)(4)(A). An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation. See id. Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation. See id.

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FTCs. See id. § 3632(d)(4)(D)–(E). In addition, an inmate cannot earn FTCs for EBRRs successfully completed prior to the enactment of the FSA on December

21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)."  See id. § 3632(d)(4)(B).  Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  See id. § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)."  See 28 C.F.R. § 523.42(a).  An inmate must also be "successfully participating" in designated programming to earn FSA credits.  See 28 C.F.R. § 523.41(c)(1).  "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA."  See id. § 523.41(c)(2).

   **C. Exhaustion of Administrative Remedies**

Although Section 2241 does not contain an explicit statutory exhaustion requirement, the Third Circuit Court of Appeals has consistently required a federal inmate to exhaust their administrative remedies before filing a Section 2241 petition.  See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) ("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." (citations omitted)).  Exhaustion is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy."  See id. at

5

761–62 (citations omitted)). Exhaustion is not required when it would not promote these goals. See Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("The exhaustion doctrine will not be applied . . . when none of the basic goals (of the doctrine) would be served." (citation and internal quotation marks omitted)). "For example, exhaustion may be excused where it 'would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm.'" Brown v. Warden Canaan USP, 763 F. App'x 296, 297 (3d Cir. 2019) (unpublished) (quoting Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of [their] confinement." See 28 C.F.R. § 542.10(a). First, an inmate should attempt informal resolution of the issue with the appropriate staff member. See id. § 542.13(b). If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the warden within twenty (20) calendar days "following the date on which the basis for the Request occurred." See id. § 542.14(a). The warden is to respond to the request within twenty (20) calendar days. See id. § 542.18. An inmate dissatisfied with the warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the warden signed the response." See id. § 542.15(a). Finally, an inmate may appeal from the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response." See id. The General Counsel's response to this appeal is due within twenty (20) calendar days; however, the time for a response may be extended by twenty (20) days. See id. § 542.18.

### III.  DISCUSSION

The Court has screened this Section 2254 habeas matter pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  See R. 4, 28 U.S.C. foll. § 2254 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.").  District courts have discretion to apply this Rule in habeas cases brought under Section 2241.  See R. 1(b), 28 U.S.C. foll. § 2254 ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").  As explained below, it plainly appears that Houston's habeas petition should be dismissed without prejudice because he failed to exhaust his administrative remedies within the BOP before filing the petition.

In this regard, Houston admits in his petition that he never filed an administrative remedy with the BOP concerning his claim about FSA time credits.  See (Doc. No. 14 at 2–3).  He indicates that he did not file an administrative remedy because he did not know how to do so.  See (id. at 2).  This is an insufficient basis for the Court to excuse exhaustion.  See Brown, 763 F. App'x at 297 (identifying possible grounds for court to excuse exhaustion of administrative remedies).  Accordingly, the Court will dismiss Houston's Section 2241 petition without prejudice due to his failure to exhaust his administrative remedies.

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss Houston's Section 2241 petition without prejudice for his failure to exhaust administrative remedies.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
